559 P.2d 698

**Vincent PETERS, Appellant,**

v.

**The CIVIL SERVICE COMMISSION OF the CITY OF TUCSON, Paul Miner, in his capacity as Secretary to the Civil Service Commission of the City of Tucson, and as Personnel Director of the City of Tucson, and William J. Gilkinson, Chief of Police of the City of Tucson, Appellees.**

**No. 2 CA–CIV 2225.**

Court of Appeals of Arizona, Division 2.

Jan. 12, 1977.

Quigley & Quigley, P. C. by John M. Quigley, Tucson, for appellant.

James D. Webb, City Atty. by Thomas J. Wilson, Asst. City Atty., Tucson, for appellees.

## OPINION

RICHMOND, Judge.

Appellant by special action in the superior court sought to set aside a decision of the Civil Service Commission upholding his suspension for 20 days without pay from his position as an officer of the City of Tucson Police Department. The complaint alleged that the decision of the Civil Service Commission was not supported by substantial evidence, and violated Rule 12, § 4(d) of the Rules and Regulations of the Civil Service Commission in failing to set forth findings of basic facts. The trial court dismissed the complaint on the grounds that the order of the Civil Service Commission upholding the suspension "was not arbitrary, capricious or an abuse of discretion, said order being supported by substantial evidence." The first two questions presented for review on this appeal are the identical questions presented to the trial court; in addition, appellant contends that the judgment fails to satisfy the requirement of Rule 6 of the Rules of Procedure for Special Actions that the grounds of the decision shall be stated therein.

The facts may be summarized as follows. Appellant and his partner responded, while on nighttime patrol duty, to a radio call describing a possible armed robbery of a convenience market. While enroute, they

heard a further description of events supporting the possibility that a robbery was in progress. When they reached the area, appellant and his partner approached the market on foot from different sides, and appellant saw a car, with one or two occupants and its engine running, parked next to the rear of the building. While appellant was crouched, watching the car, he heard a bang from the front of the store that sounded to him like a gunshot. He then saw a subject running towards the car, and heard his partner yell, "Freeze—police!" The subject ran about three more steps and entered the car, which immediately started forward. Appellant, who was 20 to 30 yards away, aimed his service revolver at a front tire and fired one round. As the vehicle continued to accelerate, he fired a second round at the windshield. Several other police officers converged on the car as it came to a stop. The three occupants were unarmed juveniles, one of whom had thrown a smoke bomb into the market. The exploding smoke bomb had made the noise that appellant took for a gunshot, and appellant's partner, who had seen the subject throw something into the store before starting to run, had no intention of shooting at him or the moving car because he had concluded "that it was not an armed robbery but it was some juveniles playing around."

Appellant's suspension without pay was based on a finding that he had violated the following provision of the Rules and Regulations of the Tucson Police Department:

5.12 When Firearms May be Discharged Firearms may be discharged by an officer in the performance of a police duty under the following circumstances:

\*     \*     \*     \*     \*     \*

d. When necessary to effect the capture of, or prevent the escape of a person whom the officer is virtually certain has committed a forcible felony, and whose freedom poses a threat to life. The officer shall not shoot unless all other available means to effect the capture of the felon have been exhausted.

The regulation further defines robbery as a forcible felony.

The regulation thus establishes a three-pronged test of whether a police officer has the right to discharge a firearm in performance of his duty, as follows:

1. He must be virtually certain a forcible felony (in this case robbery) has been committed;

2. Freedom of the person he is attempting to capture, or whose escape he is attempting to prevent, must pose a threat to life;

3. All other available means to effect the capture must first have been exhausted.

Appellant's contention that his suspension was based on hindsight, because the subjects turned out to be unarmed juveniles who had not committed any forcible felony, ignores the reason for the regulation. It is just such a possibility that requires not only virtual certainty that such a felony has been committed but the exhaustion of other means of capture and a reasonable belief that the lives of others are endangered before resorting to the use of lethal force.

■ The record contains substantial evidence that in discharging his firearm, appellant violated one or more of the foregoing requirements. While the radio description of events, coupled with the noise of the smoke bomb exploding, provided reasonable grounds for one in appellant's position to believe that a robbery had been committed, the regulation requires more, i. e., virtual certainty. Appellant was not in a position to observe sufficient facts on which to make a determination of virtual certainty, whereas his partner, who was able to see more, concluded that it was only "some juveniles playing around."

In addition, there was substantial evidence that the subjects' freedom did not pose a threat to life, and little if any evidence to the contrary. Appellant's argument that the mere possibility of a high-speed chase poses such a threat bears no reasonable relationship to the degree of force that is the subject of the regulation, and conflicts with the third requirement. Pursuit, in the absence of other circumstances, is an "available means to effect the

capture of the felon." Further, there was substantial evidence that appellant knew, or should have known, that other police units were converging on the area and available to effect the capture, and that such a chase was unlikely.

■ Appellant's second point is based on this court's opinion in *Civil Service Comm'n of City of Tucson v. Livingston*, 22 Ariz. App. 183, 189, 525 P.2d 949 (1974), in which we defined the basic facts that are required to be found as being ". . . more detailed than the ultimate facts but less detailed than a summary of the evidence." Here, the Civil Service Commission found that appellant twice discharged his firearm at a moving automobile, and had failed to comply with each prong of the test set forth by § 5.12(d), in that (1) he was not virtually certain that a forcible felony had been committed; (2) the freedom of the occupants in the motor vehicle did not pose a threat to life; and (3) all other available means of effecting the capture of the occupants had not been exhausted. While these are ultimate facts, the underlying evidence necessary to support them is not in dispute, and there is a presumption that the existence of the necessary basic facts was ascertained and found. *Civil Service Comm'n of City of Tucson v. Livingston*, supra.

■ Finally, we find no merit in the contention that the judgment of the trial court fails to set forth the grounds for its decision as required by the rules of procedure for special actions. It is eminently clear from the judgment that the decision of the trial court is based on its conclusion that the order of the Civil Service Commission was supported by substantial evidence, and as such was not arbitrary, capricious or an abuse of discretion.

Affirmed.

HOWARD, C. J., and HATHAWAY, J., concur.